## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

IN RE:

DAVID ALDEAN EVERRITT

CASE NO.: 16-30531-JCO
CHAPTER 11

    Debtor-in-possession.

---

## DEBTOR-IN-POSSESSION'S PLAN OF REORGANIZATION

---

David Aldean Everritt, also known as, the Debtor-in-Possession ("Debtor") hereby submits to his creditors his Plan of Reorganization (the "Plan") pursuant to Chapter 11 of Title 11, United States Code (hereafter referred to as the "Bankruptcy Code" or the "Code").

### SUMMARY OF PLAN

The Debtor owns 30 parcels of real property[1], of which 29 are rental properties. All of the properties are located within a historical district in Pensacola, Florida. Some of the properties are subject to mortgages which exceed the value of the properties. In some cases, the properties are also subject to a second mortgage.

---

[1] Additionally, the Debtor holds a one-half remainder interest in the Debtor's father's house located in Bay County, Florida.

- 1 -

The Plan proposes to re-amortize the debts owed to the secured creditors on each of the properties. Specifically, the debts will be re-amortized based on the secured portion of the claim which will result, in those cases where the value is less than the secured debt, in a bifurcation of the claim into a secured claim and an unsecured claim. The secured claim, which will be equal to the value of the property, will be paid in full to be re-amortized with interest accruing as set forth in the Plan and with the claim to be paid over a term of 25 years unless otherwise specified herein. As to those properties in which the value exceeds the debt, the claim will be paid in full to be amortized over a term of 25 years at the interest rate set forth herein.

All unsecured creditors will be paid monthly payments over a period of five years with each creditor to receive a pro rata distribution based on the allowed amount of the claim.

## ARTICLE I

## DEFINITIONS

Except as otherwise indicated, the terms used in this Plan have the definitions set forth in the Bankruptcy Code and applicable Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy

{M1148571.1}

Court for the Northern District of Florida.  In addition, the following terms shall have the following meanings:

1.1    Allowed claim shall mean a claim (a) with respect to which a proof of claim has been filed with the Court within the applicable period of limitation fixed by the Federal Rules of Bankruptcy Procedure, Rule 3003, or (b) scheduled in the schedules prepared and filed by the Debtor with the Court and not listed as disputed, contingent or unliquidated as to amount, or (c) as set forth in the Debtor's Plan or Disclosure Statement, as filed or as subsequently amended, in either case, as to which no objection has been then determined by an order of the Court which is no longer subject to appeal. An allowed claim shall not include unmatured or post-petition interest unless otherwise stated in the Plan.

1.2    Allowed secured claim shall mean an allowed claim secured by a lien or other security interest in property of the Debtor to the extent of the value of the property as set forth in the Debtor's Disclosure Statement or, if a valuation is requested by the secured creditor, as determined pursuant to Section 506(a) of the Code.

1.3    Confirmation date shall mean the date upon which the Order of Confirmation is entered by the Court.

{M1148571.1}

1.4   <u>Court</u> shall mean the United States Bankruptcy Court for the Northern District of Florida in which the Debtor's Chapter 11 case is pending or any Court having competent jurisdiction to hear appeals from the Bankruptcy Court.

1.5   <u>Debtor</u> shall mean David Aldean Everritt, the Debtor-in-Possession and the proponent of this Plan of Reorganization.

1.6   <u>Effective Date</u> shall mean the date following the confirmation date after which no appeal of the Order of Confirmation can be taken and the date upon which all conditions precedent to the effectiveness of the Plan has occurred or been waived and upon which Counsel for the Debtor files a Notice of Effective Date with the Bankruptcy Court.

1.7   <u>Order of Confirmation</u> shall mean the Order entered by the Court confirming the Plan with the provisions of Chapter 11 of the Code.

1.8   <u>Plan</u> shall mean this Chapter 11 Plan of Reorganization as amended, modified or altered in accordance with the Code.

1.9   <u>Present Value</u> shall mean the value, as of the Effective Date of the Plan, of property to be distributed under the Plan and shall refer to the amount payable to creditors holding an Allowed Claim or an Allowed Secured Claim in deferred payments at a rate of interest on the Allowed

- 4 -

Claim of Allowed Secured Claim that is necessary to realize to such Holder the value of such claim as of the Effective Date of the Plan. Unless the Holder of an Allowed Claim or an Allowed Secured Claim objects prior to the commencement of the Confirmation Hearing, or unless this Plan specifically and expressly provides differently, the rate of interest necessary to realize such value shall be deemed to be four and a quarter percent (4.25%) per annum; provided, however, that in the event of an objection to such rate by the Holder of any Allowed Claim or Secured Claim, the rate of interest necessary to realize such Holder the Present Value of the allowed amount of such Holder's Claim shall be such rate as determined by the Court or as agreed upon by the Debtor and the Holder of the Claim. As to a Holder(s) of a Claim(s) in a Class who objects to the interest rate, payments to be made pursuant to the Plan shall be computed based upon four and a quarter percent (4.25%) unless and until the Court determines otherwise in a Final Order, in which event the rate of interest will be adjusted accordingly.

1.10   Term of the Plan shall mean the period after the Effective Date during which payments are being made to the creditors.

{M1148571.1}

ARTICLE II

CLASSIFICATION AND TREATMENT OF CLAIMS

The claims of creditors and interests are classified and shall be treated as follows:

2.1 (A)    Administrative Expense Claims: Class 1

1.    Allowed Administrative Expense Claims Against the Debtor. Subject to the bar date provisions of Paragraph 2 of this Section, the holders of Allowed Administrative Expense Claims against the Debtor, unless otherwise agreed or set forth in this Plan, are entitled to priority under Section 507(a)(2) of the Bankruptcy Code.  An Entity entitled to payment pursuant to Sections 546(c) or 553 of the Bankruptcy Code, and any Entity entitled to payment of an Administrative Expense Claim pursuant to Sections 503 and 507(a)(2) of the Bankruptcy Code, shall receive from the Debtor, on account of such Allowed Administrative Expense Claim, cash in the amount of such Allowed Administrative Expense Claim on the Effective Date, or pursuant to an agreement between the Debtor and the Claimant, whichever comes later.

2.    Bar Date for Filing Applications for Allowance and Payment of Other Administrative Expense Claims.  Applications for allowance and

- 6 -

payment of Administrative Expense Claims (except for Professional Fee Claims) must be filed on or within fifteen (15) days after the Confirmation Hearing. The Court shall not consider any applications for the allowance of an Administrative Expense Claim incurred prior to Confirmation that are filed after such fifteen (15) day period, and any such Administrative Expense Claim shall be discharged and forever barred. All Administrative Expense Claims that become Allowed Administrative Expense Claims after the Confirmation Hearing will be treated like other Allowed Administrative Expense Claims and will be paid on the later of the Effective Date, within thirty (30) days after becoming an Allowed Administrative Expense Claim, or pursuant to an agreement between the Debtor and the Claimant. Any such Claim that is allowed, but determined not be an Administrative Expense Claim, will be treated as a General Unsecured Claim under Class 24.

   3. <u>Payment of Deferred Administrative Expenses.</u> To the extent that Debtor does not have at any time prior to entry of a Final Decree sufficient funds to pay Holders of Allowed Administrative Expense Claims and the Holders of such Claims agree to defer some or a portion of their Claim, such Holder(s) shall be paid deferred payments.

{M1148571.1}

2.1(B)      <u>Professional Fee Claims.</u>

1.      <u>Allowed Professional Fee Claims Against the Debtor.</u>  Holders of Allowed Professional Fee Claims shall receive from the Debtor, on account of such Allowed Professional Fee Claim, cash in the amount of such Allowed Professional Fee Claim as set forth in paragraph 2.1(B)(2) below.

2.      <u>Bar Date for Filing Application for Allowance and Payment of Fee Claims Against the Debtor.</u>  Holders of Professional Fee Claims shall file any final applications for allowance and payment of Professional Fee Claims within sixty (60) days after the Confirmation Date.  The Bankruptcy Court shall not consider any applications for the allowance of a Professional Fee Claim filed after such date, and any such Professional Fee Claim shall be discharged and forever barred.  All Professional Fee Claims that become Allowed Professional Fee Claims after the Confirmation date will be treated like other Allowed Professional Fee Claims and will be paid on the later of the Effective or within Thirty (30) days after becoming an Allowed Professional Fee Claim unless otherwise ordered by the Bankruptcy Court or agreed to by the Debtor and the Claimant.

3.      <u>Payment of Deferred Professional Fee Claims.</u>  To the extent that Debtor does not have at any time prior to entry of a Final Decree

sufficient funds to pay the Holders of Professional Fee Claims and the holders of such Claims agree to defer some or a portion of her claim, such holder(s) shall be paid in deferred payments.

2.1(C)    Priority Claims and Priority Tax Claims.

1.    Allowed Priority Claims Against the Debtor.  Subject to the bar date provisions of Paragraph (2) of this Section, the holders of Allowed Priority Claims (other than priority tax claims as set forth below) against the Debtor shall receive from the Debtor on account of such Allowed Priority Claims, cash in the amount of such Allowed Priority Claim on the later of the Effective Date, within thirty (30) days after becoming an Allowed Priority Claim, or pursuant to an agreement between the Debtor and the Claimant.

2.    Bar Date for filing Priority Claims.  Applications for allowance and payment of Priority Claims incurred on or before the Petition date must have been filed by the Bar Date.  The Bankruptcy Court shall not consider any applications for the allowance of any Priority Claim filed after such date, and any such Priority Claim shall be discharged and forever barred. All Priority Claims that become Priority Claims after the Confirmation Date will be treated like other Priority Claims and will be paid on the later of the

- 9 -

Effective Date, within thirty (30) days after becoming a Priority Claim, or pursuant to an agreement between the Debtor and the Claimant. Any such Claim that is allowed, but determined not to be a Priority Claim, will be treated as a General Unsecured Claim under Class 35.

3.    <u>Allowed Priority Tax Claims Against the Debtor</u>. Subject to the bar date provisions of Paragraph (4) of this Section, the Holder of an Allowed Priority Tax Claim against the Debtor shall receive from the Debtor on account of such Allowed Priority Tax Claim, an amount equal to the Allowed Claim paid in equal, consecutive monthly payments over a five year term commencing the first full month after the Effective Date of the Plan. Anything herein to the contrary notwithstanding, the Holder(s) of Priority Tax Claims for ad valorem real property or tangible personal property taxes shall be treated and paid under Class 34.

4.    <u>Bar Date for Filing Priority Tax Claims</u>. Applications for allowance and payment of Priority Tax Claims incurred on or before the Petition Date must have been filed by the Bar Date. The Bankruptcy Court shall not consider any applications for the allowance of any Priority Tax Claim filed after such date, and any such Priority tax Claim shall be discharged and forever barred. All Priority Tax Claims that become Priority

- 10 -

Tax Claims after the Confirmation Date shall be treated like other Priority Tax Claims and will be paid on the later of the Effective Date, within thirty (30) days after becoming an Allowed Priority Tax Claim, or pursuant to an agreement between the Debtor and the Claimant. Any such Claim that is allowed, but determined not to be a Priority Tax Claim, will be treated as a General Unsecured Claim under Class 35.

2.1(D)    U.S. Trustee's Fees.

The Debtor shall timely pay post-Confirmation quarterly fees assessed pursuant to 28 U.S.C. Section 1930(a)(6) until such time as the Bankruptcy Court administratively closes the case or enters a Final Decree closing the Bankruptcy Case. Any such fees outstanding and due as of the Effective Date shall be paid on the Effective Date.

2.2    Unsecured Priority Claim of the Internal Revenue Service: Class 2

The Internal Revenue Service filed an Unsecured Priority Claim for income taxes owed by the Debtor for tax years ending 2013, 2014, and 2015 which estimated the priority tax claim to be $86,835.24. However, the Debtor has filed an amended return for 2015 which reduced the Debtor's tax liability for 2015 from $57,813.00 to $7,607.00. As a result, the priority claim of the Internal Revenue Service should be reduced to $36,629.24. The

- 11 -

priority claim of the Internal Revenue Service shall be paid over a period of the remaining number of months that is sixty months from the date of the commencement of the case in equal monthly installments accruing interest at the statutory rate.

2.3    Secured Claim of U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust (900 N. Devilliers Street Unit A & B, Pensacola, FL): Class 3

U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation Trust, ("U.S. Bank Trust") holds a claim in the amount of $131,125.15 as of June 6, 2016, secured by a first position mortgage on real property located at 900 N. Devilliers Street, A & B, Pensacola, Florida.  The Debtor has valued the property at $46,000.00.  Accordingly, the claim of U.S. Bank Trust, shall be bifurcated and U.S. Bank, shall have a secured claim in the amount of $46,000.00 (Class 3) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35, General Unsecured Claims. The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum.  This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date.  The payment amount on this claim shall be $249.20 per month for principal and interest.

- 12 -

The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company. Taxes and insurance are not escrowed. The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. U.S Bank Trust, N.A., shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between U.S. Bank Trust, N.A., and Debtor, except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time that the indebtedness owed to U.S. Bank Trust. N.A., as Trustee for LSF9 Master Participation Trust is paid in full. This claim is impaired.

2.4    Secured Claim of Citi Mortgage, Inc. as servicer for U.S. Bank National Association as Trustee for CMALT REMIC Series 2007-A2-REMIC Pass-Through Certificate Series 2007-A2 (516 West Strong Street, Pensacola, FL): Class 4

Citi Mortgage, Inc. as servicer for U.S. Bank National Association as Trustee for CMALT REMIC Series 2007-A2-REMIC Pass-Through Certificate Series 2007-A2 ("Citi Mortgage") holds a claim in the amount of $188,672.52 as of June 6, 2016, secured by real property located at 516 West Strong Street, Pensacola, Florida. The Debtor has valued the property at

- 13 -

$85,000.00. Accordingly, the claim of Citi Mortgage shall be bifurcated and Citi Mortgage shall have a secured claim in the amount of $85,000.00 (Class 4) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35, General Unsecured Claims. The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum. This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim shall be $460.00 per month for principal and interest. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company. The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. Citi Mortgage shall retain its lien on said real property to secure payment of the allowed amount of the secured claim. All other terms and conditions of the note and mortgage between Citi Mortgage, Inc. as servicer for U.S. Bank National Association as Trustee for CMALT REMIC Series 2007-A2-REMIC Pass-Through Certificate Series 2007-A2 and Debtor, except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time that the indebtedness owed to Citi Mortgage, Inc.

as servicer for U.S. Bank National Association as Trustee for CMALT REMIC Series 2007-A2-REMIC Pass-Through Certificate Series 2007-A2 is paid in full. This claim is impaired.

2.5   Secured Claim of HSBC Bank USA, National Association as Trustee for Deutsche Al-B Securities, Mortgage Loan Trust, Series 2006-AB4 (923 N. Devilliers St., Pensacola, FL): Class 5

HSBC Bank USA, National Association as Trustee for Deutsche Al-B Securities, Mortgage Loan Trust, Series 2006-AB4 ("HSBC Bank") holds a claim in the amount of $ 162,067.05 as of June 6, 2016, secured by first position mortgage on real property located at 923 N. Devilliers Street, Pensacola, Florida. The Debtor has valued the property at $46,000.00. Accordingly, the claim of HSBC Bank shall be bifurcated and HSBC Bank shall have a secured claim in the amount of $46,000.00 (Class 5) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35, General Unsecured Claims. The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum. This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim shall be $249.20 per month for principal and interest. The Debtor shall pay

- 15 -

{M1148571.1}

taxes and insurance premiums directly to the tax collector and the insurance company. The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. HSBC Bank shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between HSBC Bank USA, National Association as Trustee for Deutsche Al-B Securities, Mortgage Loan Trust, Series 2006-AB4 and Debtor except as modified herein, shall remain in full force and effectThe creditor shall retain its lien until the time that the indebtedness owed to HSBC Bank USA, National Association as Trustee for Deutsche Al-B Securities, Mortgage Loan Trust, Series 2006-AB4 is paid in full. This claim is impaired.

2.6    Secured Claim of HSBC Bank, USA, National Association as Trustee for Deutsche Alt-B Securities, Mortgage Loan Trust, Series 2006-AB4 (424 W. Desoto Street, Pensacola, FL): Class 6

HSBC Bank, USA, National Association as Trustee for Deutsche Alt-B Securities, Mortgage Loan Trust, Series 2006-AB4, holds a claim in the amount of $176,361.49 as of June 6, 2016, secured by a first position mortgage on real property located at 424 W. Desoto Street, Pensacola, Florida. The Debtor has valued the property at $65,000.00. Accordingly, the

claim of HSBC Bank shall be bifurcated and HSBC Bank shall have a secured claim in the amount of $65,000.00 (Class 6) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35, General Unsecured Claims.   The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum.   This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim shall be $352.00 per month for principal and interest. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company. The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter.  HSBC Bank shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between HSBC Bank USA, National Association as Trustee for Deutsche Al-B Securities, Mortgage Loan Trust, Series 2006-AB4 and Debtor except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time that the indebtedness owed to HSBC Bank USA, National Association as Trustee for Deutsche Al-B

- 17 -

Securities, Mortgage Loan Trust, Series 2006-AB4 is paid in full.    This claim is impaired.

2.7    Secured Claim of U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Asset-Backed Pass-Through Certificates, Series 2002-1 (2000 N. Barcelona Street, Pensacola, FL): Class 7

Secured Claim of U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Asset-Backed Pass-Through Certificates, Series 2002-1, servicer Wells Fargo ("Wells Fargo") holds a claim in the amount of $73,737.35 as of June 6, 2016, secured by a first position mortgage on real property located at 2000 N. Barcelona Street, Pensacola, Florida. The Debtor has valued the property at $70,000.00. Accordingly, the claim of Wells Fargo shall be bifurcated and Wells Fargo shall have a secured claim in the amount of $70,000.00 (Class 7) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35, General Unsecured Claims.    The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum.    This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection

{M1148571.1}

payments prior to the Effective Date. The payment amount on this claim shall be $379.22 per month for principal and interest. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company. The taxes and insurance amount may be adjusted annually. The first payment to be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. Wells Fargo shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between Wells Fargo and Debtor except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time that the indebtedness owed to Wells Fargo is paid in full. This claim is impaired.

2.8    Secured Claim of Wells Fargo Bank, N.A. (907 Devilliers Street, Pensacola, FL): Class 8

Wells Fargo Bank holds a claim in the amount of $83,742.70 as of June 6, 2016, secured by real property located at 907 Devilliers Street, Pensacola Florida. Synovus Bank who holds a second mortgage on the property, has obtained an appraisal with a sales comparison valuation of $85,000.00. The Debtor accepts this valuation for purposes of determining

- 19 -

the secured claim. Accordingly, Wells Fargo shall have a secured claim in the amount of $83,742.70 (Class 8). The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum. This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim shall be $453.67. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company. The first payment to be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. Wells Fargo shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between Wells Fargo and Debtor except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time that the indebtedness owed to Wells Fargo is paid in full. This claim is impaired.

## 2.9   Secured Claim of Specialized Loan Servicing (901 Devilliers Street, Pensacola, FL): Class 9

Specialized Loan Servicing ("SLS") holds a claim in the amount of $181,841.96 as of June 6, 2016, secured by first position mortgage on real

property located at 901 Devilliers Street, Pensacola, Florida. The Debtor has valued the property at $51,000.00. Accordingly, the claim of SLS shall be bifurcated and SLS shall have a secured claim in the amount of $51,000.00 (Class 9) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35, General Unsecured Claims. The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum. This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim shall be $276.00 per month for principal and interest. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company. The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. SLS shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between SLS and Debtor except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time that the indebtedness owed to SLS is paid in full. This claim is impaired.

## 2.10   Secured Claim of Wells Fargo Bank, N.A. (514 W. Gonzalez Street, Pensacola, FL): Class 10

Wells Fargo Bank, N.A., holds a claim in the amount of $83,752.23 as of August 30, 2016, secured by real property located at 514 W. Gonzalez Street, Florida). The Debtor has valued the property at $45,000.00. Accordingly, the claim of Wells Fargo shall be bifurcated and Wells Fargo shall have a secured claim in the amount of $45,000.00 (Class 10) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35, General Unsecured Claims.   The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum.   This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date.   The payment amount on this claim shall be $243.78 per month for principal and interest. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company.   The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter.

Wells Fargo shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between Wells Fargo and Debtor except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time that the indebtedness owed to Wells Fargo is paid in full. This claim is impaired.

2.11   Secured Claim of Wells Fargo Bank, N.A. (1206 N. Devilliers Street, Pensacola, FL): Class 11

Wells Fargo Bank, N.A., holds a claim in the amount of $69,500.07 as of June 6, 2016, secured by real property located at 1206 N. Devilliers Street, Florida. The Debtor has valued the property at $67,000.00. Accordingly, the claim of Wells Fargo shall be bifurcated and Wells Fargo shall have a secured claim in the amount of $67,000.00 (Class 11) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35, General Unsecured Claims.   The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum.   This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date.   The payment amount on this claim

- 23 -

shall be $362.96 per month for principal and interest. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company. The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. Wells Fargo shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between Wells Fargo and Debtor except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time that the indebtedness owed to Wells Fargo is paid in full. This claim is impaired.

2.12  Secured Claim of U.S. Bank National Association, as Trustee for Citigroup Mortgage Loan Trust, Inc., Asset-Backed Pass-Through Certificates, Series 2005-WF2 (909 Devilliers Street, Pensacola, Florida): Class 12

U.S. Bank National Association, as Trustee for Citigroup Mortgage Loan Trust, Inc., Asset-Backed Pass-Through Certificates, Series 2005-WF2 (serviced by Wells Fargo Bank, N.A.) ("U.S. Bank") holds a claim in the amount of $121,772.06 as of June 6, 2016 secured by a first position mortgage on real property on 909 Devilliers Street, Pensacola, Florida. The Debtor has valued the property at $68,000.00. Accordingly, the claim of

- 24 -

U.S. Bank shall be bifurcated and U.S. Bank shall have a secured claim in the amount of $68,000.00 (Class 12) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35, General Unsecured Claims.   The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum.   This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date.   The payment amount on this claim shall be $368.00 per month for principal and interest. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company.   The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter.   U.S. Bank shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between U.S. Bank and Debtor except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time that the indebtedness owed to U.S. Bank is paid in full.   This claim is impaired.

{M1148571.1}

2.13  Secured Claim of U.S. Bank, National Association, as Trustee for MASTR Asset Backed Securities Trust 2005-AB1, Mortgage Pass-Through Certificates Series 2005-AB1 (811 Mallory Street, Pensacola, Florida): Class 13

U.S. Bank, National Association, as Trustee for MASTR Asset Backed Securities Trust 2005-AB1, Mortgage Pass-Through Certificates Series 2005-AB1 (serviced by Wells Fargo Bank)("U.S. Bank") holds a claim in the amount of $100,882.79, as of June 6, 2016 secured by real property located at 811 Mallory Street, Pensacola, Florida.  The Debtor has valued the property at $57,000.00.  Accordingly, the claim of U.S. Bank shall be bifurcated and U.S. Bank shall have a secured claim in the amount of $57,000.00 (Class 13) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35, General Unsecured Claims. The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum.  This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date.  The payment amount on this claim shall be $309.00 per month for principal and interest. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company.  The first payment shall be made on

- 26 -

the first day of the first full month after the Effective Date and on the first day of each month thereafter. U.S. Bank shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between U.S. Bank and Debtor except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time that the indebtedness owed to U.S. Bank is paid in full. This claim is impaired.

2.14   Secured Claim of Wells Fargo Bank, N.A. (709 W. Gonzalez Street, Pensacola, FL): Class 14

Wells Fargo Bank, N.A. holds a claim in the amount of $46,678.09, as of June 6, 2016, secured by real property located at 709 W. Gonzalez Street, Pensacola, Florida. The Debtor has valued the property at $25,000.00. Accordingly, the claim of Wells Fargo shall be bifurcated and Wells Fargo shall have a secured claim in the amount of $25,000.00 (Class 14) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35, General Unsecured Claims. The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum. This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection

{M1148571.1}

payments prior to the Effective Date. The payment amount on this claim shall be $135.43 per month for principal and interest. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company. The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. Wells Fargo shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between Wells Fargo and Debtor except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time that the indebtedness owed to Wells Fargo is paid in full. This claim is impaired.

### 2.15    Secured Claim of U.S. Bank, National Association, as Trustee for Credit Suisse First Boston Mortgage Securities Corp., CSAB Mortgage-Backed Pass-Through Certificates Series 2006-4 (500 W. Gregory Street, Pensacola, FL): Class 15

U.S. Bank National Association, as Trustee for Credit Suisse First Boston Mortgage Securities Corp., CSAB Mortgage-Backed Pass-Through Certificates, Series 2006-4 (serviced by America's Servicing Company) ("U.S. Bank") holds a claim in the amount of $370,486.35, as of September 12, 2016, secured by real property located at 500 W. Gregory Street,

{M1148571.1}

Pensacola, Florida.  The Debtor has valued the property at $77,000.00. Accordingly, the claim of U.S. Bank shall be bifurcated and U.S. Bank shall have a secured claim in the amount of $77,000.00 (Class 15) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35, General Unsecured Claims.  The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum.  This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date.  The payment amount on this claim shall be $417.00 per month for principal and interest. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company.  The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. U.S. Bank shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between U.S. Bank and Debtor except as modified herein, shall remain in full force and effect.  The creditor shall retain its lien until the time that the indebtedness owed to U.S. Bank is paid in full.  This claim is impaired.

{M1148571.1}

2.16  Secured Claim of Deutsche Bank Trust Company, as Trustee for Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS7 (1017 N. Devilliers Street, Units A & B, Pensacola FL): Class 16

Deutsche Bank Trust Company, as Trustee for residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS7 (serviced by Ocwen Loan Servicing) ("Deutsche Bank") holds a claim in the amount of $100,272.25, as of June 6, 2016, secured by real property located at 1017 N. Devilliers Street, Units A & B, Pensacola, Florida. The Debtor has valued the property at $54,000.00. Accordingly, the claim of Deutsche Bank shall be bifurcated and Deutsche Bank shall have a secured claim in the amount of $54,000.00 (Class 16) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35, General Unsecured Claims.   The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum. This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim shall be $293.00 per month for principal and interest. The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter.

Deutsche Bank shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between Deutsche Bank and Debtor except as modified herein. The creditor shall retain its lien until the time that the indebtedness owed to Deutsche Bank is paid in full. This claim is impaired.

2.17   Secured Claim of Deutsche Bank National Trust Company as Trustee for Residential Asset Securitization Trust, Series 2005-A6CB Mortgage Pass-Through Certificates Series 2005-F (1011 North A Street, Pensacola, FL): Class 17

Deutsche Bank Trust Company, as Trustee for Residential Asset Securitization, Series 2005-A6CB Mortgage Pass-Through Certificates, Series 2005-F (serviced by Ocwen Loan Servicing) ("Deutsche Bank") holds a claim in the amount of $132,102.14, as of June 6, 2016, secured by real property located at 1011 North A Street, Pensacola, Florida. The Debtor has valued the property at $76,000.00. Accordingly, the claim of Deutsche Bank shall be bifurcated and Deutsche Bank shall have a secured claim in the amount of $76,000.00 (Class 17) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35, General Unsecured Claims. The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum. This amount will be adjusted as of the Effective

- 31 -

Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim shall be $412.00 per month for principal and interest. The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. Deutsche Bank shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between Deutsche Bank and Debtor except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time that the indebtedness owed to Deutsche Bank is paid in full. This claim is impaired.

2.18   Secured Claim of Ocwen Loan Servicing (903 N. Devilliers Street, Pensacola, FL): Class 18

Ocwen Loan Servicing holds a claim in the amount of $134,651.33, as of June 6, 2016, secured by real property located at 903 N. Devilliers Street, Pensacola, Florida. The Debtor has valued the property at $101,000.00. Accordingly, the claim of Ocwen Loan Servicing shall be bifurcated and Ocwen Loan Servicing shall have a secured claim in the amount of $101,000.00 (Class 18) and an unsecured claim for the balance to be paid in

accordance with the provisions in Class 35, General Unsecured Claims. The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum. This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim shall be $547.00 per month for principal and interest. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company. The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. Ocwen Loan Servicing shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between Ocwen Loan Servicing and Debtor, except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time that the indebtedness owed to Ocwen Loan Servicing is paid in full. This claim is impaired.

- 33 -

**2.19  Secured Claim of Morgan Stanley Mortgage Loan Trust 2006-2, Mortgage Pass-Through Certificates, Series 2006-2, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee (625 Lloyd Street, Pensacola, FL): Class 19**

Secured Claim of Morgan Stanley Mortgage Loan Trust 2006-2, Mortgage Pass-Through Certificates, Series 2006-2, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee (serviced by Specialized Loan Servicing, LLC) ("Morgan Stanley") holds a claim in the amount of $102,118.96 as of June 6, 2016, secured by real property located at 625 Lloyd Street, Pensacola, Florida. The Debtor has valued the property at $46,000.00. Accordingly, the claim of Morgan Stanley shall be bifurcated and Morgan Stanley shall have a secured claim in the amount of $46,000.00 (Class 19) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35, General Unsecured Claims. The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum. This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim shall be $249.00 per

- 34 -

month for principal and interest.  The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company. The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter.  Morgan Stanley shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between Morgan Stanley and Debtor, except as modified herein, shall remain in full force and effect.  The creditor shall retain its lien until the time that the indebtedness owed to Morgan Stanley is paid in full. This claim is impaired.

## 2.20   Secured Claim of Ocwen Loan Servicing (711 W. Gonzalez Street, Pensacola, FL): Class 20

Ocwen Loan Servicing holds a claim in the amount of $56,730.34, as of June 6, 2016, secured by real property located at 711 W. Gonzalez Street, Pensacola, Florida.   The Debtor has valued the property at $33,000.00. Accordingly, the claim of Ocwen Loan Servicing shall be bifurcated and Ocwen Loan Servicing shall have a secured claim in the amount of $33,000.00 (Class 20) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35, General Unsecured Claims.

- 35 -

The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum. This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim shall be $179.00 per month for principal and interest. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company. The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. Ocwen Loan Servicing shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between Ocwen Loan Servicing and Debtor, except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time that the indebtedness owed to Ocwen Loan Servicing is paid in full. This claim is impaired.

2.21   Secured Claim of Deutsche Bank National Trust Company as Trustee for Morgan Stanley Mortgage Loan Trust 2005-10, Mortgage Pass-Through Certificate Series 2005-10 (518 W. Strong Street, Pensacola, FL): Class 21

Deutsche Bank Trust Company, as Trustee for Morgan Stanley Mortgage Loan Trust 2005-10, Mortgage Pass-Through Certificate Series

{M1148571.1}

2005-10 (serviced by Specialized Loan Servicing, LLC) ("Deutsche Bank") holds a claim in the amount of $113,965.98, as of June 6, 2016, secured by real property located at 518 W. Strong Street, Pensacola, Florida. Synovus Bank which holds a second mortgage on the property has obtained an appraisal indicating a value of $130,000.00 based on a sales comparison valuation. The Debtor has obtained an appraisal indicating a value of $116,000.00. The Debtor proposes a value of $123,000.00 for purposes of determining the secured claim. Accordingly, Deutsche Bank shall have a secured claim in the amount of $113,965.98 (Class 21). The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum. This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim shall be $617.39 per month for principal and interest. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company. The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. Deutsche Bank shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of

- 37 -

the note and mortgage between Deutsche Bank and Debtor except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time that the indebtedness owed to Deutsche Bank is paid in full. This claim is impaired.

## 2.22 Secured Claim of Ocwen Loan Servicing, LLC (1019 N. Devilliers Street, Pensacola, FL): Class 22

Ocwen Loan Servicing, LLC, holds a claim in the amount of $96,045.33, as of June 6, 2016, secured by real property located at 1019 N. Devilliers, Pensacola, Florida. The Debtor has valued the property at $32,000.00. Accordingly, the claim of Ocwen Loan Servicing shall be bifurcated and Ocwen Loan Servicing shall have a secured claim in the amount of $32,000.00 (Class 22) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35, General Unsecured Claims. The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum. This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim shall be $173.36 per month for principal and interest. The Debtor shall pay taxes and insurance premiums directly to the

tax collector and the insurance company. The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. Ocwen Loan Servicing shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between Ocwen Loan Serving and Debtor except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time that the indebtedness owed to Ocwen Loan Servicing is paid in full. This claim is impaired.

2.23   Secured Claim of The Bank of New York Mellon f.k.a. The Bank of New York as Trustee for the Certificate Holders of the CWMBS, Inc., CHL Mortgage Pass-Through Trust 2007-HYB2, Mortgage Pass-Through Certificates, Series 2007-HYB2 (1121 N. Devilliers Street, Pensacola, FL): Class 23

The Bank of New York Mellon f.k.a. The Bank of New York as Trustee for the Certificate Holders of the CWMBS, Inc., CHL Mortgage Pass-Through Trust 2007-HYB2, Mortgage Pass-Through Certificates, Series 2007-HYB2 (services by Bayview Loan Servicing) ("Bank of New York Mellon") holds a claim in the amount of $136,858.87, as of June 6, 2016, secured by real property located at 1121 N. Devilliers Street, Pensacola, Florida. The Debtor has valued the property at $54,000.00.

{M1148571.1}

Accordingly, the claim of Bank of New York Mellon shall be bifurcated and Bank of New York Mellon shall have a secured claim in the amount of $54,000.00 (Class 23) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35, General Unsecured Claims. The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum. This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim shall be $292.54 per month for principal and interest. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company. The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. Bank of New York Mellon shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between Bank of New York Mellon and Debtor except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time that the indebtedness owed to Bank of New York Mellon is paid in full. This claim is impaired.

## 2.24   Secured Claim of Ditech Financial LLC f.k.a. Green Tree Servicing, LLC (1119 N. Devilliers Street, Pensacola, FL): Class 24

Ditech Financial, LLC, f.k.a. Green Tree Servicing, LLC, ("Ditech") holds a claim in the amount of $56,632.02, as of June 6, 2016, secured by real property located at 1119 N. Devilliers Street, Pensacola, Florida. Synovus Bank, who holds a second mortgage on the property, has obtained an appraisal indicating a sales comparison valuation of $110,000.00. The Debtor accepts this valuation for purposes of determining the second claim. Accordingly, Ditech shall have a secured claim in the amount of $56,632.02 (Class 24). The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum. This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim shall be $306.80 per month for principal and interest. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company. The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. Ditech shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All

- 41 -

other terms and conditions of the note and mortgage between Ditech and Debtor except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time that the indebtedness owed to Ditech is paid in full. This claim is impaired.

## 2.25   Secured Claim of Towd Point Master Funding Trust REO, by U.S. Bank Trust National Association, as Trustee (1020 N. Reus, Pensacola, FL): Class 25

Towd Point Master Funding Trust REO, by U.S. Bank Trust National Association (serviced by Select Portfolio Servicing) ("Towd Point") holds a claim in the amount of $517,223.46, as of June 6, 2016, secured by real property located at 1020 N. Reus, Pensacola, Florida. The Debtor and creditor have reached an agreement on the value of the property in the amount of $350,000.00. Accordingly, the claim of Towd Point shall be bifurcated and Towd Point shall have a secured claim in the amount of $350,000.00 (Class 25) and an unsecured claim for the balance ($167,223.46) which shall be reduced to $0.00 upon confirmation of the Plan. The secured claim shall be amortized over 30 years with an interest rate of 5.25% per annum with all remaining amounts to be due upon the maturity date, October 1, 2046. This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to

- 42 -

the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim shall be $1,932.71 per month for principal and interest and $45.98 for taxes and $515.46 for insurance for a total of $2,494.15. The taxes and insurance amount may be adjusted annually. The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. Payments are to be made to *Towd Point at Attn: Remittance Processing, P.O. Box 65450, Salt Lake City, UT 84165-0450* with reference to the last four digits of the loan number 1366 or as otherwise directed. Towd Point shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between Towd Point and Debtor except as modified herein, shall remain in full force and effect, including any escrow of taxes and insurance that may be required under said mortgage. The creditor shall retain its lien until the time that the indebtedness owed to Towd Point is paid in full. This claim is impaired.

2.26 <u>Secured Claim of Federal National Mortgage Association ("Fannie Mae") (520 West Strong Street, Pensacola, FL): Class 26</u>

Federal National Mortgage Association ("Fannie Mae") (serviced by

{M1148571.1}

Seterus) holds a claim in the amount of $130,661.59, as of June 6, 2016, secured by real property located at 520 West Strong Street, Pensacola, Florida. The Debtor has valued the property at $42,000.00. Accordingly, the claim of Fannie Mae shall be bifurcated and Fannie Mae shall have a secured claim in the amount of $42,000.00 (Class 26) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35, General Unsecured Claims. The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum. This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim shall be $227.53 per month for principal and interest. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company. The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. Fannie Mae shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between Fannie Mae and Debtor except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time

that the indebtedness owed to Fannie Mae is paid in full. This claim is impaired.

## 2.27   Secured Claim of Ditech Financial f.k.a. Green Tree Servicing, LLC, (1005 N. Devilliers Street, Pensacola, FL): Class 27

Ditech Financial ("Ditech") holds a claim in the amount of $73,763.24, as of June 6, 2016, secured by real property located at 1005 N. Devilliers Street, Pensacola, Florida. The Debtor has valued the property at $65,000.00. Accordingly, the claim of Ditech shall be bifurcated and Ditech shall have a secured claim in the amount of $65,000.00 (Class 27) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35, General Unsecured Claims. The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum. This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim shall be $352.13 per month for principal and interest. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company. The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter.

Ditech shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between Ditech and Debtor except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time that the indebtedness owed to Ditech is paid in full. This claim is impaired.

### 2.28   Secured Claim of Homer Graham (900 N. Pace Blvd., Pensacola, FL): Class 28

Homer Graham holds a claim in the amount of $93,000.00, as of the petition date, secured by real property located at 900 N. Pace Blvd., Pensacola, Florida. The Debtor has valued the property at $58,000.00. Accordingly, the claim of Homer Graham shall be bifurcated and Homer Graham shall have a secured claim in the amount of $58,000.00 (Class 28) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35, General Unsecured Claims. The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum. This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim

{M1148571.1}

shall be $314.21 per month for principal and interest. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company. The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. Homer Graham shall retain his lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between Homer Graham and Debtor except as modified herein, shall remain in full force and effect. The creditor shall retain his lien until the time that the indebtedness owed to Homer Graham is paid in full. This claim is impaired.

## 2.29   Secured Claim of Homer Graham (Devilliers/Gonzalez Lot, Pensacola, FL): Class 29

Homer Graham holds a claim in the amount of $14,669.00, as of the petition date, secured by real property located at Devilliers/Gonzalex Lot, Pensacola, Florida. The Debtor has valued the property at $35,625.00. Accordingly, this claim shall be paid in full less a credit to the Debtor for any principal reduction resulting from payments made pre-confirmation. The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum. The payment amount on this claim shall be $79.47 per month for

principal and interest. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company. The first payment shall be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. Homer Graham shall retain hiss lien on said real property to secure payment of the allowed amount of said secured claim. The creditor shall retain his lien until the time that the indebtedness owed to Homer Graham is paid in full. This claim is impaired.

2.30 <u>Secured Claim of Synovus Bank (1023 N. Devilliers St.): Class 30</u>

Synovus Bank holds a claim in the amount of $845,847.25 as of June 6, 2017 secured by a first position mortgage on real property located at 1023 N. Devilliers Street, Pensacola, Florida. Synovus Bank has obtained an appraisal which values the property at $422,250.00 based on an income value approach. The Debtor accepts the valuation of the property for purposes of this Plan. Accordingly, the claim of Synovus Bank shall be bifurcated and Synovus Bank shall have a secured claim in the amount of $422,250.00 (Class 30) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35 (General Unsecured Claims). The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum. This amount will be adjusted as of the Effective Date to

{M1148571.1}

the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim shall be $2,347.00 per month for principal and interest. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company. Taxes and insurance are not escrowed. The first payment shall be made on the first day of the first full month after the effective date and on the first day of each month thereafter. Synovus Bank shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between Synovus Bank and Debtor, except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time that the indebtedness owed to Synovus Bank is paid in full. This claim is impaired.

2.31    Secured Claim of Synovus Bank (911 N. Devilliers St.): Class 31

Synovus Bank holds a claim in the amount of $183,905.66 as of June 6, 2017 secured by a first position mortgage on real property located at 911 N. Devilliers Street, Pensacola, Florida. Synovus Bank has obtained an appraisal which values the property at $163,400.00 based on an income value approach. The Debtor accepts the valuation of the property for

- 49 -

purposes of this Plan. Accordingly, the claim of Synovus Bank shall be bifurcated and Synovus Bank shall have a secured claim in the amount of $163,400.00 (Class 31) and an unsecured claim for the balance to be paid in accordance with the provisions in Class 35 (General Unsecured Claims). The secured claim shall be amortized over 25 years with an interest rate of 4.25% per annum. This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim shall be $908.00 per month for principal and interest. The Debtor shall pay taxes and insurance premiums directly to the tax collector and the insurance company. Taxes and insurance are not escrowed. The first payment shall be made on the first day of the first full month after the effective date and on the first day of each month thereafter. Synovus Bank shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between Synovus Bank and Debtor, except as modified herein, shall remain in full force and effect. The creditor shall retain its lien until the time that the indebtedness owed to Synovus Bank is paid in full. This claim is impaired.

{M1148571.1}

2.32   Secured Claim of Synovus Bank (518 W. Strong St.): Class 32

Synovus Bank holds a claim in the amount of $52,927.70 as of June 6, 2016, secured by a second position mortgage on real property located at 518 W. Strong Street, Pensacola, Florida. The property is subject to a first mortgage held by Deutsche Bank with a balance of $113,965.98 as of the date of the filing of the Petition. Synovus Bank has obtained an appraisal of the property indicating a value of $130,000.00 on a sales comparison approach. The Debtor has obtained an appraisal indicating a value of $116,000.00. The Debtor proposes a value of $123,000.00 for purposes of determining the secured claim. Accordingly, after applying the amounts owed on the first mortgage towards the value of the property, Synovus Bank shall have a secured claim for the balance of the equity in the property in the amount of $9,034.02. Synovus Bank shall have an unsecured claim for the balance of the debt owed to it to be paid in accordance with the provisions of Class 35, General Unsecured Claims. The secured claim shall be amortized over 25 years with an interest rate of 4.25%. This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim shall be $48.94 per

{M1148571.1}

month for principal and interest. The first payment to be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. Synovus Bank shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between Synovus Bank and Debtor, except as modified herein, shall remain in full force and effect. Creditor shall retain its lien until the time that the indebtedness owed to Synovus Bank is paid in full. This claim is impaired.

2.33  Secured Claim of Synovus Bank (907 N. Devilliers St. and 1119 N. Devilliers St. ): Class 33

Synovus Bank holds a claim in the amount of $102,987.91 as of June 6, 2016, secured by a second position mortgage on real property located at 907 N. Devilliers Street and property located at 1119 N. Devilliers St., Pensacola, Florida. Synovus Bank has obtained an appraisal indicating the value of the property located at 907 N. Devilliers Street is $85,000.00 based on a sales comparison valuation. Synovus Bank has obtained an appraisal indicating the value of the property located at 1119 N. Devilliers Street is $110,000.00 based on a sales comparison valuation. The debtor accepts this valuation for purposes of determining the secured claim. The properties are

subject to first mortgages in favor of Wells Fargo Bank in the amount of $83,742.70 as to 907 N. Devilliers Street and in favor of Ditech in the amount of $56,632.02 as to 1119 N. Devilliers Street for a total of $140,374.72. Accordingly, after applying the amounts owed on the first mortgages towards the value of the properties, Synovus Bank shall have a secured claim for the balance of the combined equity in the properties in the amount of $54,050.28. Synovus Bank shall have an unsecured claim for the balance of the debt owed to it to be paid in accordance with the provisions of Class 35, General Unsecured Claims. The secured claim shall be amortized over 25 years with an interest rate of 4.25%. This amount will be adjusted as of the Effective Date to the extent that any principal reduction has occurred due to the payment of adequate protection payments prior to the Effective Date. The payment amount on this claim shall be $292.81 per month for principal and interest. The first payment to be made on the first day of the first full month after the Effective Date and on the first day of each month thereafter. Synovus Bank shall retain its lien on said real property to secure payment of the allowed amount of said secured claim. All other terms and conditions of the note and mortgage between Synovus Bank and Debtor, except as modified herein, shall remain in full force and

- 53 -

{M1148571.1}

effect. Creditor shall retain its lien until the time that the indebtedness owed to Synovus Bank is paid in full. This claim is impaired.

Claims for Advances for Taxes or Insurance: Classes 3-33

To the extent that a creditor holding a claim in class 3-33 (paragraphs 2.3-2.33) may have made an advance pre-petition for the payment of taxes or insurance or other advances allowed under the note or mortgage related to its claim, such pre-petition advances shall be deemed to be part of the Creditor's claim at the time that the petition was filed and shall not be deemed to be a separate claim or a claim in addition to, the claim owed on the date that the petition was filed. To the extent that a creditor in classes 3-33 has made an advance for taxes or insurance after the date the Debtor filed his petition and prior to the date of confirmation of Debtor's Plan, such Creditor shall be deemed to have an additional claim for all amounts advanced by the Creditor. Debtor shall repay creditor all amounts advanced by creditor, pursuant to the mortgage, for advances for taxes or insurance paid by creditor after the date the Debtor's petition was filed initiating this case and which are paid by the creditor through the date of confirmation of Debtor's Plan. This provision shall not be deemed to apply to amounts paid from escrow amounts paid to Creditor by Debtor from which Creditor pays

- 54 -

taxes or insurance, but, rather, shall apply only to amounts advanced by the creditor resulting from an escrow shortage. The post-petition advances shall be repaid by Debtor in equal monthly installments over 60 months commencing on the tenth day of the first full month after the Effective Date. Creditor shall file a Proof of Claim for post-petition escrow advances no later than ten days after the confirmation hearing. If a Proof of Claim for post-petition advances if not filed, the amounts claimed shall not be allowed. Debtor and Creditor may reach an agreement that requires Debtor to pay monthly escrows for future taxes and insurance which will come due after the Effective Date to be included in the monthly payment for principal and interest. If such an agreement is reached, Debtor shall pay to Creditor in addition to the amounts to be applied to the note and mortgage, as principal and interest, as set forth in paragraphs 2.3-2.33, an additional amount to be deposited into an escrow account by Creditor to pay taxes and insurance as they come due. If the Debtor and Creditor do not reach an agreement regarding Creditor escrowed amounts or if the Creditor does not elect to have Debtor pay escrows directly to Creditor, Debtor shall pay all taxes and insurance which come due subsequent to the confirmation of Debtor's Plan.

{M1148571.1}

## 2.34   Priority Claims of the Escambia County Tax Collector: Class 34

The Escambia County Tax Collector has filed a proof of claim (Claim 21-1) for unpaid property taxes. However, since the time the proof of claim was filed, some of the taxes have been paid. The amount owed as of April 3, 2017 is $22,401.24 and is set forth below:

| Property/ Acct No. | Amount Claimed | Amount Scheduled | Allowed |
|---|---|---|---|
| Devilliers/Gonzalez Lot 13-1436-000 | $3,018.52 | | $3,018.52 |
| 1023 N. Devilliers St. 13-1582-500 | $10,678.14 | $7,337.62 | $10,678.14 |
| 500 Blk W. Strong St. 13-1590-000 | $918.99 | $806.09 | $918.99 |
| 900 N. Pace Blvd. 15-1271-500 | $3,544.83 | | $3,544.83 |
| 911 N. Devilliers St. 13-1602-000 | $4,240.76 | | $4,240.76 |

Claim 34 shall be paid in equal monthly payments which shall be remitted over 60 months from the date of filing (June 6, 2016) with the first payment to be made on the first day of the first full month after the Effective Date. The claim shall be paid in equal monthly installments amortized from the first day of the first full month after the Effective Date to June 6, 2021 or 60 months after the date of filing.

- 56 -

### 2.35   General Unsecured Claims: Class 35

This class consists of claimants who have a general, non-priority unsecured claim greater than $1,000.00.  The Debtor will pay a total of $43,200.00 to unsecured creditors, as a class, over a period of seventy-two (72) months following the Effective Date.  Holders of allowed claims in this class will be paid in equal consecutive monthly payments over a period of five years commencing on the first day of the first full month after the Effective Date of this Plan.  Claimants in Class 35 will receive a pro rata distribution based on the allowed amount of the claim as a percentage of the total claims in the Class.   Creditors in this class will receive monthly payments, with no interest accruing. Claims in this Class are impaired.

### 2.35(a)    General Unsecured Claims of Less than $1000.00 (Administrative Ease): Class 35(a)

This Class consists of claimants who have a general, non-priority unsecured claim less than $1000.00.  For purposes of administrative ease, at the election of the Debtor, claimants in this Class may be paid in a one-time lump sum payment the amount which would otherwise be payable to the claimant under paragraph 2.35 above, if the payments were paid over 60 months, no later than 60 days after the Effective Date of the Plan.

### 2.36   Claims of Creditors Holding Second Mortgages which are "Wholly

Unsecured": Kim Clements, Homer Graham, Michael Vince, Wells Fargo
Bank, TSI: Class 36

Creditors, Kim Clements, Homer Graham, Michael Vince, Wells
Fargo Bank, and TSI are included in this class because each of these
creditors holds a second mortgage on one of the Debtor's properties.
Because, in each case, the value of the property securing the mortgage is
worth less than the balance owed on the first mortgage the second mortgage
is deemed to be "wholly unsecured". As to each of the second mortgages
held by creditors listed in this class, the second mortgage shall be stripped
and upon the Effective Date shall be deemed to no longer be a lien on the
property. Any objection to the valuation as set forth in paragraph 4.3 of this
Plan, must be filed with the Court and a request for valuation under section
506(a) of the Bankruptcy Code must be made. If no objection to valuation is
filed, the values set forth in the Disclosure Statement, or this Plan, or any
amendments thereto, shall be binding for purposes of this paragraph.
Creditors in this Class 36 shall be paid as a General Unsecured Creditor,
Class 35, under the provisions of paragraph 2.35 of the Plan. The creditors
listed in this class holds second mortgages on the properties listed below:

     a. TSI – 1005 N. Devilliers St.

    b.  Kim Clements – 1020 N. Reus St.

    c.  Homer Graham – 1206 N. Devilliers St.

    d.  Michael Vince – 911 N. Devilliers St.

    e.  Wells Fargo Bank – 2000 N. Barcelona

## ARTICLE III

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

3.1    The Debtor is a landlord under leases entered into with the tenants of the various rental properties.  Upon confirmation of the Debtor's Chapter 11 Plan, the leases will all be deemed to have been assumed by the Debtor.

## ARTICLE IV

## MEANS AND IMPLEMENTATION OF THE PLAN

4.1    <u>Means and Implementation.</u>

The Debtor proposes to fund his Chapter 11 Plan through the monthly rental income from the rental properties.  The Debtor receives gross income of approximately $42,356.59 per month.  From this amount, the Debtor pays expenses of ownership (excluding payments to secured creditors on mortgages) in the amount of $23,837.10.  This includes costs for insurance, taxes, periodic maintenance, management costs, and the Debtor's draw.  The net rental income will be used to make payments to

- 59 -

the secured creditors holding mortgages on the re-amortized secured claims secured by the rental properties. The funds will also be used to pay monthly payments to priority creditors and unsecured creditors over a period of 60 months from the Effective Date.

4.2    Real Property Owned by the Debtor

The Debtor owns 32 parcels of real property which includes 30 rental properties. The properties owned by the Debtor, together with the Debtor's estimate of the value of each property are as set forth below. Upon confirmation of the Plan, the values set forth in this section shall be deemed to be the values of the property. Any objection to the valuation must be filed with the Court in the form of an Objection to the Disclosure Statement and a request for valuation under section 506(a) of the Bankruptcy Code. If an objection to the valuation of the parcel of property is filed, the value will be as agreed upon by the parties, or if no agreement can be reached, as determined by the Court:

### VALUATION OF REAL PROPERTY

1.    900 N. Devilliers A & B – Value: $46,000.00

2.    1020 N. Reus – Value - $350,000.00

3.    424 DeSoto – Value: $65,000.00

4.    1206 Devilliers – Value: $67,000.00

5.    1119 Devilliers – Value: $110,000.00

6.    514 Gonzalez – Value $45,000.00

7.    1023 Devilliers- Value $422,250.00

8.    1019 Devilliers – Value: $32,000.00

9.    1005 N. Devilliers – Value $65,000.00

10.   500 Block – West Strong Street – Value: $2,200.00

11.   520 West Strong Street – Value $46,000.00

12.   923 N. Devilliers – Value $46,000.00

13.   909 Devilliers – Value $68,000.00

14.   903 Devilliers – Value $101,000.00

15.   901 N. Devilliers – Value $51,000.00

16.   516 W. Strong St.– Value $85,000.00

17.   518 W. Strong St. – Value $123,000.00

18.   500 W. Gregory St. – Value $77,000.00

19.   625 W. Lloyd St. – Value $46,000.00

20.   711 W. Gonzalez – Value $33,000.00

21.   811 W. Mallory – Value $57,000.00

22.   900 N. Pace Blvd. – Value: $58,000.00

{M1148571.1}

23.    1011 N. A Street – Value: $76,000.00

24.    1017 N. Devilliers – Value: $54,000.00

25.    1121 N. Devilliers – Value: $54,000.00

26.    911 N. Devilliers – Value: $163,400.00

27.    709 W. Gonzalez – Value: $25,000.00

28.    907. N. Devilliers – Value: $85,000.00

29.    Devilliers/Gonzalez Lot – Value: $35,625.00

30.    2000 N. Barcelona – Value: $70,000.00

31.    The Debtor owns one-half of a future, non-possessory remainder interest in the property owned by Debtor's father located at 5118 Deep Bayou Drive, Panama City, Florida. Because this is a future nonpossessory interest, no present value has been assigned to this interest.

## 4.3    Modification of Existing Notes

Upon the Effective Date of the plan, the promissory notes or any other instruments evidencing any claim shall be deemed to be modified in accordance with the provisions of the confirmed plan without the necessity for the execution of modification agreements except to the extent that a new mortgage must be recorded to evidence any new term under the plan. All provisions of the notes and mortgages to the extent not modified by the

terms of the confirmed plan shall remain in full force and effect.

4.4     Objections to Claims

The Debtor may object to any claim filed with the Bankruptcy Court and may object to and contest the allowance of any such claims. Within 21 days after service of the objection, written responses must be filed with the Bankruptcy Court by the holder of the claim. Failure to file a written response shall constitute a waiver and release of the claim.

4.5     Disputed Claims

No distribution shall be made on any disputed claim until such time as the claim is resolved by agreement of the parties or by an order of the Bankruptcy Court.

ARTICLE V

ACCEPTANCE OR REJECTION OF THE PLAN

5.1     Classes Entitled to Vote

Each holder of an Allowed Claim in a Class of Claims against the Debtor which may be impaired and is to receive a distribution under the Plan shall be entitled to vote separately to accept or reject the Plan. Each holder of a claim in a Class of Claims which is unimpaired under the Plan shall be deemed to have accepted the Plan pursuant to Section 1126(f) of the

Bankruptcy Code.

5.2    Cramdown

Under the Plan there are impaired classes of claims.  In the event that it is determined that there are impaired class or classes of claims that do not accept the Plan, the Debtor as proponent of the Plan reserves the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code and/or (b) modify the Plan to provide treatment sufficient to assure that the Plan does not discriminate unfairly, and is fair and equitable, with respect to the class or classes not accepting the Plan, and, in particular, the treatment necessary to meet the requirements of Sections 1129(a) and (b) of the Bankruptcy Code with respect to the rejecting classes and any other classes affected by such modifications.  The Plan may be the subject of cramdown under Section 1129(b).

## ARTICLE VI

## EFFECT OF CONFIRMATION OF PLAN

6.1    Effect of Confirmation

A.    Vesting of Assets.  On the Effective Date, all property of the estate shall vest in David Aldean Everritt, reorganized Debtor, in accordance

- 64 -

with the provisions of Section 1141(b) of the Bankruptcy Code.  This Plan does not provide any exceptions to such vesting.

B.      <u>Discharge of Debtor.</u>  The Debtor is entitled to a discharge pursuant to the terms of Section 1141.

C.      <u>Exculpations.</u>  The professionals retained by the Debtor shall have no liability to any holder of a claim or other person for any act, event or omission in connection with, relating to, or arising out of, the Bankruptcy Case, the negotiation of the Plan, the Consummation of the Plan, the administration of the Plan, or the property to be distributed under the Plan, except for any liability based on willful misconduct or gross negligence.  In all such instances, the above referenced parties shall be and have been entitled to reasonably rely on the advice of counsel with respect to her duties and responsibilities in connection with the Bankruptcy Case and under the Plan.  Such exculpation shall not extend to any post-petition act of any party other than in connection with that party's official capacity in the Bankruptcy Case.

D.      <u>Injunction.</u>  Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Bankruptcy Court, all entities who have held, hold or may hold Claims against, or interests in, the

- 65 -

Debtor, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor, (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtor or against Debtor's Assets or the Property, and (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the Property or interests in property of the Debtor on account of any such Claim or Interest.

E.   REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN

(a) Automatic Stay Vacated: The automatic stay of section 362(a) of the Bankruptcy Code terminates as of the Effective Date of the Plan.

(b) Creditor Action Restrained. The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, notwithstanding paragraph (a) above, a creditor may not take any action to enforce either the pre-confirmation obligation or the obligation due under

- 66 -

the Plan, so long as Debtor is not in Material Default under the Plan, as defined in paragraph (c) below.

(c) Material Default Defined. If Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than 10 calendar days after the time specified in the Plan for such payment or other performance, the affected creditor may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default. If Debtor fails within 20 calendar days after the date of service of the notice of default either: (i) to cure the default; or (ii) to obtain from the court an extension of time to cure the default, or a determination that no default occurred, then Debtor is in Material Default under the Plan.

(d) Remedies Upon Material Default. Upon Material Default, an affected creditor may:

(i) Take any actions permitted under applicable non-Bankruptcy law to enforce the obligation due the affected creditor under the Plan, and may accelerate the time for performance of all payments and other performance due to the creditor over the course of the Plan and not yet performed at the time of the Material Default; or

(ii) File and serve a motion to convert the case to one under

Chapter 7.

(e) Claim not Affected by Plan. Upon confirmation of the Plan, any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except right based on default of the type that need not be cured under section 1124(2)(A) and (D).

(f) Effect of Conversion to Chapter 7. If the case is at any time converted to one under Chapter 7:

(i) All property of the Debtor as of the date of conversion, whether acquired pre-confirmation or post-confirmation, shall vest in the Chapter 7 bankruptcy estate; and

(ii) All creditors, whether their claims arose pre-confirmation or post-confirmation, are prohibited from taking action against the Chapter 7 bankruptcy estate or property of the estate by section 362 of the Bankruptcy Code.

(g) Retention of Jurisdiction. This court shall retain jurisdiction over proceedings: (i) to determine whether Debtor has defaulted in performance of any Plan obligation; (ii) to determine whether the time for performing any Plan obligation should be extended; (iii) to determine

- 68 -

whether the case should be converted to one under Chapter 7 (and proceedings following any such conversion); (iv) to determine whether Debtor is in Material Default; and (v) any enforcement action permitted under paragraph (d)(1) of Part 10 above.

F.    Releases. Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each Holder (as well as any agents on behalf of each holder) of a Claim shall be deemed to have forever waived, released, and discharged the Debtor and attorneys for the Debtor, including J. Steven Ford and Wilson, Harrell, Farrington, Ford, Wilson, Spain & Parsons, P.A.., to the fullest extent permitted by Section 1141 of the Bankruptcy Code, of and from any and all Claims, rights and liabilities that arose after the commencement of this Case and prior to the Effective Date.

As of the Effective Date, the Debtor, and her respective agents, accountants, financial consultants and attorneys, including Professionals (acting in such capacity), shall neither have nor incur liability to any Entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, **Confirmation** or consummation of the Plan, or Disclosure Statement, or earlier versions of

- 69 -

same or any contract, instrument, release or other agreement or documents created or entered into, or any other action taken or omitted to be taken in connection with this Plan or this Chapter 11 Case; provided, however, that the foregoing provisions of this Section shall have **no** effect on the liability of any Entity that would otherwise result from any such action or omission to the extent that such action or omission is determined in a Final Order to have constituted willful misconduct.

The injunction, release, and exculpation provisions contained in the Plan are fair and equitable, are given for valuable consideration, and are in the best interests of the Debtor and its Chapter 11 Estate, and such provision shall be effective and binding upon **all Entities.**

6.2    Term of Injunction or Stays.

Unless otherwise provided herein or otherwise ordered by the court, all injunctions or stays set forth in Sections 105 or 362 of the Bankruptcy Code (11 U.S.C. §§105 and 362) shall remain in full force and effect until the Effective Date rather than the Confirmation Date. Nothing in this Section, however, shall be construed as a limitation of the permanent discharge and injunction provisions provided for in this Plan.

{M1148571.1}

## ARTICLE VII

## CONDITIONS PRECEDENT TO EFFECTIVE DATE

The Effective Date shall occur and will commence upon the date that all conditions to the effectiveness of the Plan have been satisfied or waived, and which shall be evidenced by the Debtor's counsel filing a Notice of Effective Date with the Bankruptcy Court. The occurrence of the Effective Date and the Substantial Consummation of the Plan are subject to satisfaction of the following conditions precedent:

7.1    Confirmation Order.

The Confirmation Order shall have become a Final Order and be in full force and effect.

7.2    Execution of Documents; Other Actions.

All other actions and documents necessary to implement the Plan shall have been executed and no conditions to the respective effectiveness thereof shall exist.

7.3    Payment of all Allowed Administrative Claims and Allowed Professional Fee Claims.

All Allowed Administrative Claims and Allowed Professional Fee Claims shall be paid by the Debtor to the extent provided herein.

7.4   Waiver.

In its sole discretion, the Debtor may waive any condition precedent, in its favor, to confirmation and to the occurrence of the Effective Date.

## ARTICLE XIII

## RETENTION OF JURISDICTION

8.1   To the maximum extent permitted by the Bankruptcy Code or other applicable law, the Bankruptcy Court shall have jurisdiction of all matters arising out of, and related to, the Bankruptcy Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following nonexclusive purposes:

(1)   To construe and to take any action to enforce this Plan and to issue such orders as may be necessary for the implementation, execution and confirmation of this Plan;

(2)   To hear and determine the allowance or classification of Claims or Existing Equity Holders' Claims and to determine any objections thereto and/or the subordination thereof;

(3)   To determine rights to Distribution pursuant to this Plan;

(4)   To hear and determine applications for the assumption or

{M1148571.1}

rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(5)    To determine any .and all applications, motions, adversary proceedings, contested matters and other litigated matters that may be pending in the Bankruptcy Court on or initiated after the Effective Date;

(6)    To hear and determine any objection to Administrative Expense Claims or Claims;

(7)    To hear and determine any Causes of Action brought or continued by or against the Debtor to the maximum extent permitted under applicable law;

(8)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(9)    To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(10)   To hear and determine matters concerning any Release and to enforce the injunctions set forth in the Plan;

(11)   To consider any modifications of the Plan, to cure any defect or

omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(12)   To hear and determine all Fee Applications as well as objections to payment of fees and expenses;

(13)   To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or any transactions contemplated by the Plan;

(14)   To hear and determine all questions and disputes regarding title to, and any action to recover any of, the Assets or property of the Debtor or its estate, wherever located;

(15)   To hear and determine matters concerning state, local, and Federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(16)   To consider and act on the compromise and settlement of any claim against the Debtor or its estate;

(17)   To hear any other matter not inconsistent with the Bankruptcy Code; provided, that with respect to consideration issued to parties in interest under the Plan, the Bankruptcy Court shall have no further

- 74 -

jurisdiction; and

(18)    To enter a Final Decree closing the Bankruptcy Case.

(19)    To consider and/or enforce the rights and claims of the parties under and pursuant to all documents or agreements entered into pursuant to the Plan or necessary for the effectiveness thereof under this Plan.

## ARTICLE IX

## MISCELLANEOUS

9.1    Binding Effects.

The Plan shall be binding upon and inure to the benefit of the Debtor, the holder of Claims and Equity Interests, and her respective successors and assigns.

9.2.    Successors and Assigns.

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

9.3.    Defects, Omissions, Amendment and Modification of the Plan; Severability.

(1)    Defects, Omissions, Amendments and Modifications. The

- 75 -

Debtor may, with the approval of the Bankruptcy Court and without notice to holders of Claims, insofar as it does not materially and adversely affect holders of Claims, correct any defect, omission, or inconsistency in the Plan in such a manner and to such extent necessary or desirable to expedite the execution of the Plan. The Debtor or Reorganized Debtor may propose amendments or alterations to the Plan before or after confirmation as provided in section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of holders of Claims, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code and the Debtor has complied with section 1125 of the Bankruptcy Code. The Debtor or Reorganized Debtor may propose amendments or alterations to the Plan before or after the Confirmation Date but prior to substantial Consummation, in a manner that, in the opinion of the Bankruptcy Court, does not materially and adversely affect holders of Claims, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code, the Debtor has complied with section 1125 of the Bankruptcy Code, and after notice and hearing, the Bankruptcy Court confirms such Plan, as modified, under section 1129 of the

Bankruptcy Code.

(2)   Severability. In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

9.4. Revocation or Withdrawal of the Plan.

(1)   The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.

(2)   If the Plan is revoked or withdrawn prior to the Confirmation Date the Plan shall be deemed null and void. In such event, all of the Debtor's and Creditor's respective obligations shall remain unchanged and nothing contained herein or in the Disclosure Statement shall be deemed an admission or statement against interest or to constitute a waiver or release of any claims by or against the Debtor or any other

- 77 -

Person or to prejudice in any manner the rights of any Debtor or any Person in any further proceedings involving the Debtor.

9.5. <u>Notices.</u>

Any notice required or permitted to be provided under the Plan shall be in writing and served by either (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, freight prepaid, to be addressed as follows:

> J. Steven Ford, Esq.
> Wilson, Harrell, Farrington, Ford,
> Wilson, Spain, & Parsons, P.A.
> 307 S. Palafox Street
> Pensacola, FL 32502
> (850) 438-1111 Telephone
> (850) 432-8500 Facsimile
> Counsel for the Debtor

All notices, requests, elections or demands to or upon the Debtor or the Reorganized Debtor in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, three (3) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested, and sent to the above address. All notices to Claimants, Creditors, and Equity Interest holders shall be sent to their last known address. The Debtor, and

{M1148571.1}

any Claimant, Creditor, or Equity Interest holder, may designate in writing any other address for purposes of this Section, which designation shall be effective upon receipt.

9.6.    No Admissions.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by any entity with respect to any matter set forth herein.

9.7.    Payment of Statutory Fees.

For so long as the Debtor's Bankruptcy Case shall remain open and pending before the Court, all fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid by the Reorganized Debtor. For purposes of calculating the fees payable under section 1930 of Title 28 of the United States Code, only disbursements made under or in connection with the Plan shall be taken into account.

9.8    Exemption from Certain Taxes.

Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from the Debtor to any person or Entity pursuant to the Plan, any mortgage entered into by Debtor in favor to any Creditor pursuant to the terms of this

Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local government officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

9.9. Headings.

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

9.10. Exhibits.

All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

9.11. Filing of Additional Documents.

On or before substantial Consummation of the Plan, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to reasonably effectuate and further evidence the

terms and conditions of the Plan.

Respectfully submitted,

J. Steven Ford
Florida Bar Number 512869
Wilson, Harrell, Farrington, Ford,
Wilson, Spain, & Parsons, P.A.
Attorneys at Law
307 South Palafox Street
Pensacola, FL 32502
(850) 438-1111 Telephone
(850) 432-8500 Facsimile
*Counsel for the Debtor*

*David Aldean Everritt*

{M1148571.1}